# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 07-1278

**KENNETH JOHN CANNON, JR.**

**VERSUS**

**LENARD BERTRAND, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 06-C-5663-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge,  John D. Saunders, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

**Steven Gerald Durio**
**Durio, McGoffin, Stagg & Ackermann**
**P. O. Box 51308**
**Lafayette, LA 70505-1305**
**(337) 233-0300**
**Counsel for Plaintiff/Appellant:**
**Kenneth John Cannon, Jr.**

**James Clarence Lopez**
**Guglielmo, Lopez, Tuttle, Hunter & Jarrell**
**P. O. Drawer 1329**
**Opelousas, LA 70571**
**(337) 948-8201**
**Counsel for Defendant/Appellee:**
**LBC, LLP**

**SAUNDERS, Judge.**

This is a case wherein a withdrawing partner disputes the value assigned to his share of the partnership by the court below. The partnership, when faced with the withdrawal, chose to continue the partnership and, therefore, had to pay the withdrawing partner for the value of his share. After the parties could not agree to that value, the withdrawing partner sought a judicial determination of the value of his share in the partnership.

The trial court totaled the assets of the partnership, $1,054,368, with one-third of that total being $351,456. Next, the trial court determined that the $351,456 should be discounted by applying a minority discount of 35%. The trial court found the result, $228,447, to be the true market value of the withdrawing partner's share. The withdrawing partner has appealed. We affirm.

**FACTS AND PROCEDURAL HISTORY:**

LBC, L.L.P. (LBC) was a partnership formed by three persons, Kenneth John Cannon, Jr. (Cannon), Lenard Bertrand (Bertrand), and Wade William Leger (Leger), by a written agreement on March 25, 1997. LBC's stated purpose was to engage in agricultural pursuits including the sale and harvest of timber. This matter arises out of Cannon's withdrawal and subsequent demand for the payment of the value of his one-third share in LBC.

According to the partnership agreement, profits and losses are shared at 33⅓ for each partner, with no partner receiving any compensation, salary, or drawing account from the partnership. The partnership agreement further provides that the partners have an equal voice in management.

On April 11, 1997, LBC purchased approximately 562 acres of land located in Jefferson County, Mississippi for $450,000. The property was purchased for the

occasional sale of timber and for the partners to hunt.

At some time in the first half of 2006, Cannon notified Bertrand and Leger of his intention to withdraw from LBC. After some apparent discussion and failure to reach an agreement of the value of his one-third interest, Cannon filed a petition for determination and payment of withdrawing partner's interest on November 2, 2006. Cannon sought a judicial determination of the value that his partnership share had at the time that his membership ceased in accordance with La.Civ.Code arts. 2823, *et.seq.* A trial was held on June 14, 2007.

The trial consisted mainly of an extensive discussion of the various expert's respective valuations of the underlying assets of the partnership and the value of Cannon's share. Each party presented a certified appraiser, whose valuation included a timber appraisal by a professional forester, to compute the value of the underlying assets of the partnership, and a Certified Public Accountant (CPA)/valuation expert to extrapolate from the value of the assets, a valuation for the total partnership, and ultimately, Cannon's share.

On July 17, 2007, the trial court found that the total value of the partnership was $1,054,368, with one-third of that value being $351,456. The trial court then applied a minority discount of 35% to reach a determination that the true market value of Cannon's share was $228,447. Cannon appealed, citing four assignments of error.

**ASSIGNMENTS OF ERROR:**

1.  The trial court erred in its legal conclusion that a "discount of some amount," from the "value" otherwise due under Articles 2823-24, was warranted because a withdrawing partner would otherwise receive an amount "equivalent to liquidation without the cost of a liquidation."

2.  The trial court erred in its legal conclusion that a "discount of some amount,"

from the "value" otherwise due under Articles 2823-24, was warranted because the law does not allow the withdrawing partner "a right to demand liquidation" and "there should be some trade off between allowing a partner to withdraw without consent. . . and requiring the partnership to pay, in money, the value to the withdrawing partner."

3.      The trial court erred in interpreting and applying *Shopf v. Marina del Ray Partnership*, 549 So.2d 833 (La.1989) to authorize or require the *sua sponte* imposition and judicial determination of "a discount of some amount" which resulted in the deduction of $123,009 from the "value" otherwise due under Articles 2823-24.

4.      The trial court erred in its legal conclusion that a "discount of some amount," from the "value" otherwise due under Articles 2823-24, was not contrary to Louisiana law.

**ASSIGNMENTS OF ERROR #1, #2, #3, and #4:**

Although Cannon lists four assignments of error, the crux of each assignment is that the trial court should not have used a minority discount in determining the value of his partnership share. As such, we will address the appropriateness of the trial court's application of a minority discount to this case under one heading.

**STANDARD OF REVIEW:**

Cannon's assignments of error are termed as issues of law. Consequently, he contends that the *de novo* standard of review is applicable to the case before us. We do not agree.

Under *Shopf v. Marina Del Ray Partnership*, 549 So.2d 833 (La.1989), a court is given the option to apply a minority discount when attempting to determine the value of a minority share in a closely held business. The choice to apply a minority discount is at the discretion of the court. Therefore, we will look to the record and determine whether the trial court abused that discretion.

**THE TRIAL COURT'S USE OF A MINORITY DISCOUNT:**

"The former partner, his successors, or the seizing creditor is entitled to an

3

amount equal to the value that the share of the former partner had at the time membership ceased." La.Civ.Code art. 2823. "If a partnership continues to exist after the membership of a partner ceases, unless otherwise agreed, the partnership must pay in money the amount referred to in Article 2823 as soon as that amount is determined together with interest at the legal rate from the time membership ceases." La.Civ.Code art. 2824.

In *Shopf*, our Supreme Court established the basis for determining the value a withdrawing partner's share to be that of "fair market value." The *Shopf* court defined "fair market value" by stating:

> Fair market value is defined generally as the price that a willing buyer would pay to a willing seller for a certain piece of property in an arm's length transaction, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts. See Black's Law Dictionary 537 (rev.5th ed 1979).

*Id*. at 839.

Next, the *Shopf* court took an offer by one of the continuing partners, made just prior to the withdrawing partner expressing his intent to withdraw, and adjusted that amount for "other considerations." *Id.* at 840. When discussing the "other considerations," the court stated:

> The most significant adjustment must be made in recognition of the fact that plaintiff's share is a minority interest in a closely held business. The determination of the value of a fractional share in a business entity involves more than fixing the value of the business and multiplying by the fraction being evaluated, especially when the share is a minority interest. A minority interest may be uniquely valuable to the owner, but may have considerably less value to an independent third party, because the interest is relatively illiquid and difficult to market. G. Desmond & R. Kelley, Business Valuation Handbook, ¶ 11.01, 11.07 (1977).

*Id.*

We find that there is no evidence that the trial court abused its discretion in

4

choosing to discount Cannon's share in the partnership by 35% based upon it being a minority interest. There is evidence in the record that the value of owning an undivided one-third interest differs between the two remaining partners and an outside investor. This premise is evidenced by the following testimony of one of the remaining partners, Mr. Wade Leger:

Q.    Did you all discuss liquidating the property at the time that Mr. Cannon told you he was withdrawing?

A.    No, sir.

Q.    Did you realize that you had that option under the partnership law?

A.    Yes, sir, but we put in so much work we want to keep it if we can.

Cannon's arguments alleging that the trial court ruling was in error consist of various forms of proclaiming that minority discounts are contrary to Louisiana law. These arguments have no merit. Cannon first argues that the trial court erroneously relied upon the notion that if no minority discount was given, he would otherwise receive an amount "equivalent to liquidation without the cost of a liquidation." Cannon contends that La.Civ.Code arts. 2823 and 2824 call for the liquidation value to be used when assessing the value of a withdrawing partner's share. We do not agree.

The value to be given to a withdrawing partner's share under La.Civ.Code arts. 2823 and 2824 is that of "fair market value . . . in a true arms length transaction." *Shopf*, at 840. While there are times that the fair market value will equal the liquidation value of a withdrawing partner's share, it depends on the circumstances of each case as to whether this will be true.

Next, Cannon contends that the use of minority discounts is not mandated

5

under Louisiana law. To illustrate, Cannon cites the case of *Smith v. James, Hardy & Smith*, 31,812 (La.App. 2 Cir. 5/19/99), 736 So.2d 996, *writ denied*, 99-1775 (La. 10/1/99), 748 So.2d 448. Cannon alleges that under *Smith*, minority discounts are not required by our Supreme Court in *Shopf*. We agree with Cannon's position. Under *Shopf*, our Supreme Court has given courts the flexibility to use, at their discretion, a tool in the form of a minority discount to make a judicial determination of the value of a withdrawing partner's share. Whether it is appropriate to use a minority discount is dependant upon the circumstances of each case.

Further, the circumstances in the *Smith* case are very different than the case at bar. In *Smith* the withdrawing partner was a CPA that was withdrawing from a CPA firm. The value of his partnership share consisted of the accounts receivable and income that he was able to generate through his skill and personality. These are both tied to the withdrawing partner's identity and separable from the assets brought to the firm by the continuing partners.

Here, like in *Shopf*, the partnership's main asset is land. It is not unreasonable for the trial court to have found that a minority interest in that land is worth less than a simple mathematical one-third of the total value of that land. It is certainly feasible that an outside investor, in a fair, arms length deal, would not be willing to pay a full one-third of the value of the total asset. Interestingly, this is evidenced by the testimony of Anderson Hartiens, the CPA retained by Cannon as an expert. Hartiens testified to the following:

> Q.     - - Well, that's what this is about but it's also about valuing the share of the partner. In valuing the share of a partner, if you would assume facts that I have given you in that the partner wants to sell his [one-third] interest to a third party. Take withdrawal out of my hypothetical question. Would you recommend that your client who comes to consult with you about buying that interest

would pay a full one-third for it?

A.    No, sir.

Cannon also argues that minority discounts are contrary to Louisiana law by pointing out that courts specifically reject the use of minority discounts in other areas of law. To demonstrate this point, Cannon cites *Head v. Head*, 30,585 (La.App. 2 Cir. 5/22/98),714 So.2d 231, a family law case. While other areas of Louisiana law may not use minority discounts, our Supreme Court has specifically interpreted La.Civ.Code arts. 2823-2824 to allow the use of minority discounts in cases such as the one before us. Further, as LBC points out in brief, minority discounts are used in other areas of law. See *Moore v. CIR*, 62 T.C.M. (CCH) 1128 (1991) and *Adams v. U.S.*, 218 F.3d 383 (5th Cir. 2000). As such, we find no abuse of discretion in the trial court's decision to use a minority discount.

**THE TRIAL COURT'S PERCENTAGE OF THE MINORITY DISCOUNT:**

We also find that the trial court did not abuse its discretion in choosing to discount the value of Cannon's share by 35%. There is evidence in the record that the trial court considered many factors when determining what percentage to discount Cannon's share. First, the trial court considered the discount in the *Shopf* case of one-third. Second, it considered the discount cited in a magazine article used in the expert report of Talbott Robertson, LBC's expert CPA. The article cited stated that the data collected resulted in an average discount of 38% from the net asset value of the partnership that was given to a random outside investor purchasing a share in a random limited partnership on the secondary market. Steven Kam, Hans Schroeder, and Curt Smith, *Pricing Non-Publicly Traded Limited Partnerships*, HOULIHAN VALUATION ADVISORS VALUATION REPORT, Spring 1994, at 5.

Finally, the trial court looked to the suggested discounts from two expert reports. Cannon's expert, Hartiens opined that a minority discount was not warranted because: (1) the partnership agreement of LBC did not address the issue related to any payment to a withdrawing partner; (2) Louisiana Civil Code Article 2823 concerning the rights of a partner after withdrawal, shows that the former partner is entitled to an amount equal to the value that the share of the former partner had at the time the membership ceased; and (3) unless the partnership assets are liquidated and then distributed to each partner, an automatic market exists, as the remaining partners must purchase the withdrawing partner's share equal to fair market value.

LBC's expert, Robertson, opined that discounts were necessary for (1) a lack of control over the property as a minority owner and (2) the lack of marketability of the property. In Robertson's opinion the value of Cannon's share should be discounted by approximately 80% to $73,000.

While the trial court did not choose the discount suggested by either expert, its choice to discount Cannon's share by 35% is clearly supported by the record. Further, the three reasons cited by Cannon's expert for not using a minority discount are tenuous. First, had the partnership agreement addressed the issue of payment to a withdrawing partner, there would likely be no need for judicial determination of the value of Cannon's share. Second, the value addressed in Article 2823 consists of the true market value of that share. See *Shopf*. Finally, the fact that an automatic market exists is irrelevant to the case at bar. If it was, we would not need "to determine the fair market value of plaintiff's share *in a true arms length transaction*." *Shopf*, 549 So.2d at 840 (emphasis added).

8

**CONCLUSION:**

Accordingly, we find that the trial court did not abuse its discretion in choosing to use a minority discount, nor do we find that the trial court abused its discretion in setting that discount at 35%. As such, we affirm the trial court's judgment. All costs associated with this appeal are to be paid by Cannon.

**AFFIRMED.**