TRAYLOR, Justice.
 
 *
 

 | ,We granted this writ application in order to determine whether the courts below erred in applying a “minority discount” in determining the value of a one-third share of a partnership. For the reasons which follow, we reverse.
 

 FACTS and PROCEDURAL HISTORY
 

 In March 1997, Kenneth Cannon, Jr. (Cannon), the plaintiff, and Lenard Bertrand (Bertrand) and Wade Leger (Leger), the defendants, created LBC, L.L.P.
 
 *394
 
 (LBC), a limited liability partnership, by written agreement. The agreement, which contained no term, provided that each of the partners enjoyed an equal one-third share of the partnership, and that each partner was to have an equal voice in managing the partnership.
 

 In April 1997, LBC purchased 562 acres of rural land in Jefferson County, Mississippi for $450,000. Sometime in the early spring or summer of 2006, Cannon notified Bertrand and Leger that he intended to withdraw from the partnership. After the partners were unable to reach agreement on the value of Cannon’s one-third share of the partnership, Cannon filed suit in district court for a determination of the value Lot his share according to Civil Code Arts. 2823-25.
 

 At trial, the parties each presented expert testimony as to the value of the assets of the partnership and of Cannon’s one-third share of the same. The plaintiffs expert’s appraisal found that the value of the partnership’s assets was $1,324,203 and that plaintiffs one-third share of the partnership was worth $457,401, applying no discount. The defendants’ expert’s appraisal, on the other hand, found that the partnership’s assets were worth $955,000, and that plaintiffs one-third share was worth $80,000, assuming a 75% minority discount. The district court found that the value of the underlying assets was $1,054,368 and that plaintiffs one-third share of the partnership was worth $228,447, after applying a 35% minority discount.
 

 Determining that this court had ratified the use of minority discounts in its opinion in
 
 Shopf v. Marina Del Ray Partnership,
 
 549 So.2d 833 (La.1989), the appellate court found that the district court had not abused its discretion in either choosing to apply a minority discount, or in setting the minority discount at 35%.
 
 Cannon v. Bertrand,
 
 2007-1278 (La.App. 3d Cir.4/16/09), 981 So.2d 169. This court then granted plaintiffs application for writ of certiorari.
 
 Cannon v. Bertrand,
 
 2008-1073 (La.9/19/08), 992 So.2d 967.
 

 DISCUSSION
 

 The effects of the withdrawal of a partner in a partnership and the rights of a withdrawing partner are delineated in Civil Code Arts. 2823-25:
 

 Art. 2823. Rights of a partner after withdrawal
 

 The former partner, his successors, or the seizing creditor is entitled to an amount equal to the value that the share of the former partner had at the time membership ceased.
 

 Art. 2824. Payment of interest of partner
 

 If a partnership continues to exist after the membership of a partner |aceases, unless otherwise agreed, the partnership must pay in money the amount referred to in Article 2823 as soon as that amount is determined together with interest at the legal rate from the time membership ceases.
 

 Art. 2825. Judicial determination of amount
 

 If there is no agreement on the amount to be paid under Articles 2823 and 2824, any interested party may seek a judicial determination of the amount and a judgment ordering its payment.
 

 Although these articles make clear that the withdrawing partner is due the “value that [his] share [ ] had at the time membership ceased,” the term “value” is not defined. However, this court previously examined the valuation of a share of a partnership in the
 
 Shopf
 
 case cited above.
 

 In
 
 Shopf,
 
 a minority partner (Shopf) in a real estate venture in St. Tammany Parish withdrew from the partnership and filed
 
 *395
 
 suit in district court to have the value of his share determined according to La. C.C. arts. 2823-25. At trial, the district court determined that the value of the share was zero, as the venture had a negative book value at the time of the Shopfs withdrawal.
 

 This court reversed, deciding that a proper value of a withdrawing partner’s share could be based on fair market value, or “the price that a willing buyer would pay to a willing seller for a certain piece of property in an arm’s length transaction, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.”
 
 [1]
 

 Shopf,
 
 549 So.2d at 839. The court then looked at the amount that the majority partner (Claitor) had paid to another withdrawing minority partner (Ray) for his share of the partnership six months before Shopfs withdrawal, $3,552.63 per point, and at the price that Claitor had offered Shopf for his share of the partnership three months before the withdrawal, the same $3,552.63 |4per point, as evidence of fair market value. The court found that although both Claitor and Ray were “willing and knowledgeable participants in the sale of [the] shares,” because Claitor held shares in the same closely held business, the transaction occurred at less than arm’s length déaling.
 
 Shopf,
 
 549 So.2d at 839.
 

 Because the transaction was not conducted at arm’s length, and, therefore, the amount paid and offered was not truly “fair market value,” the court discussed the method to be used to determine the fair market value of the share:
 

 [T]he prices paid by Claitor to Ray and offered by Claitor to [Shopf] were necessarily based largely on development potential, which can be a significant factor in the appraisal of undeveloped or partially developed property. Therefore, the $3,552.63 per point price established in Claitor’s dealings with his other partners, while subject to adjustment, is the most significant factor in the determination of fair market value.
 

 The price of $3,552.63 per point must be adjusted to account for other considerations. Claitor’s July, 1984 offer to [Shopf] to sell or buy at that price was made in an effort to compromise a dispute over [Shopfs] right to purchase a portion of the share Claitor had bought from Ray. Claitor’s letter stated that the offer was only open for one week “after which we may or may not be interested at this price or some other price”. Because of the dispute compromise element, this offer should not be accorded the same weight as a bona fide offer by a party interested only in buying the share.
 

 The most significant adjustment must be made in recognition of the fact that [Shopfs] share is a minority interest in a closely held business. The determination of the value of a fractional share in a business entity involves more than fixing the value of the business and multiplying by the fraction being evaluated, especially when the share is a minority interest. A minority interest may be uniquely valuable to the owner, but may have considerably less value to an independent third party, because the interest is relatively illiquid and difficult to market.
 

 Here, when Claitor paid Ray $3,552.63 per point and offered the same price to [Shopf], he already owned or controlled a majority of the shares and had more
 
 *396
 
 interest in increasing his percentage than an outside investor would have in acquiring a minority share in the venture. Accordingly, the $3,552.63 per point price must be discounted in order to determine the fair market value of [Shopfs] share in a true arm’s length transaction.
 

 I,.¡There is no testimony in this record discussing the applicability of a minority interest discount to plaintiffs share, but some reduction is clearly warranted. Under the circumstances of this case we apply a discount of one-third to the $3,552.63 per point price in the other transactions and fix $2,368.42 per point as the fair market value of [Shopfs] share.
 

 Shopf,
 
 549 So.2d at 840 (internal citation omitted).
 

 Clearly, in
 
 Shopf,
 
 this court determined that (1) fair market value may be used as the value referenced in C.C. art. 2823, (2) the amount offered by the majority partner to the minority owner, while an indicator of fair market value, was higher than fair market value, and (3) because the amount was higher than fair market value, the amount had to be discounted to reach fair market value. This discount was not a “minority discount,” however, which is applied to the pro rata share of the assets of a partnership due to lack of control in order to find fair market value;
 
 [2]
 
 rather, it might best be termed a kind of “majority discount;” a discount applied to the “unique” value placed on property by majority owners in order to reach fair market value.
 
 [3]
 
 As such, because no minority discount was applied by the
 
 Shopf
 
 court, any mention of a minority discount by that court was merely dicta, and cannot be relied upon as precedent. Further, as the matter was not at issue in
 
 Shopf,
 
 the court did not determine that fair market value was the only means of establishing “value” as per C.C. art. 2823.
 

 Minority discounts and other discounts, such as for lack of marketability, may have a place in our law; however, such discounts must be used sparingly and only when the facts support their use.
 
 [4]
 
 Here, the district court determined the value of the | (¡assets owned by the company and then applied a discount.
 
 [5]
 
 Under the particular facts of this case, though, the use of a discount was unwarranted and, therefore, the district court abused its discretion in applying such a discount. The buyers of the partnership interest at issue are the two remaining partners in the partnership. These two partners will not be subject to a lack of control as would a third party, as each has an equal say in the control of the partnership, and, because the partners have already determined to purchase the partnership share themselves by opting to continue the partnership and avoid liquidation, neither is lack of marketability an issue. Furthermore, discounting the market value of the partnership’s property would be inequitable. The withdrawing partner should not be penalized
 
 *397
 
 for doing something the law allows him to do,
 
 [6]
 
 and the remaining partners should not thereby realize a windfall profit at his expense.
 

 CONCLUSION
 

 In sum, we hold that the “value” of the partnership share of a withdrawing partner may be determined in any of several manners-book value, market value of the underlying partnership assets, fair market value of the partnership share, or other means-depending on the circumstances requiring the valuation. Because the circumstances surrounding a partnership withdrawal can vary so greatly, this court cannot fashion a “one size fits all” method of valuation which would be fair in all cases.
 
 [7]
 
 Here, where the remaining partners are to be the buyers of the withdrawing partner’s share, market value of the underlying partnership assets is the most |7equitable manner to value the partnership share.
 

 Neither the district court’s valuation of the property nor its offsets to that amount are at issue; therefore, we adopt the court’s finding as to those values as our own. The district court found that the market value of the underlying partnership assets was $1,054,368 on the day that Cannon’s membership in the partnership ceased. Therefore, the value of the withdrawing partner’s one third share at that time, before discounting, was $851,456. The district court found that Cannon owed the partnership $3,561.16 for monthly capital and his share of property taxes, CPA fees, accounting fees, and the cost of cutting fire lanes. Therefore, LBC, L.L.P owes Cannon $347,894.84, plus legal interest from November 2, 2006, until paid.
 

 DECREE
 

 For the reasons given, we reverse and render judgment.
 

 REVERSED AND RENDERED.
 

 *
 

 Calogero, C J., retired, participated in this decision which was argued prior to his retirement.
 

 [1]
 

 . As the parties agreed that fair market value was the proper method of valuation, the means of valuation was not at issue.
 

 [2]
 

 . Neither was the discount a “marketability discount,” which refers to a discount assessed against the value of a partnership interest to reflect the lesser marketability of a minority interest.
 

 [3]
 

 . The use of the term “majority discount” is merely descriptive and is not intended to create a new type of discount.
 

 [4]
 

 . Nationally, the trend in law is away from applying such discounts.
 
 See, e.g.,
 
 7 La. Civ. L. Treatise, Business Organizations § 4.11 (2008).
 

 [5]
 

 . Although the district court did not clarify which type or types of discount it was applying, based on the language contained in the Reasons for Judgment, we believe that the discount was a combination of both minority and marketability discounts, totaling 35%.
 

 [6]
 

 . C.C. art. 2822 provides that "[i]f a partnership has been constituted without a term, a partner may withdraw from the partnership without the consent of his partners at any time, provided he gives reasonable notice in good faith at a time that is not unfavorable to the partnership.”
 

 [7]
 

 . We note that partners can specify, either before or after notification of withdrawal occurs, which type of valuation will be used.